# C. E. DREHER v. VIRGIL HILL.

Middle Section.    March 5, 1927.

No petition for Certiorari was filed.

1. **Pleading. Amendment. There is no limit to the amendment of pleadings so long as the amendments are not inconsistent.**
There is no limit to the character of the amendments that may be made to an answer, except that after one defense has been set up and proof taken thereon, the court will not allow another and inconsistent defense to be set up by way of amendment, or by a supplemental answer.

2. **Pleading. Amendment. Amendment of pleading is largely in the discretion of the trial court.**
The allowance of amendments is largely a matter resting in the sound discretion of the trial court and his rulings will not be disturbed unless there is evidence that the discretion was abused.

3. **Innocent purchaser. The defense of innocent purchaser must be pleaded.**
The defense of innocent purchaser cannot be made at the hearing, unless set up by plea, or answer; and when set up in an answer must contain the same essential averments, and be otherwise as full and explicit, as though set up in a plea.

4. **Appeal and error. On a broad appeal in a chancery case the appellee may assign error upon the rulings of the Chancellor adverse to him.**
On a broad appeal in a chancery case the appellee may assign errors upon the rulings of the Chancellor adverse to him, but matters not contained in assignments of error by appellee are not rendered reviewable by general discussion or even particular objection made later in the general argument accompanying the assignments of error.

5. **Estates. The purchaser at a chancery sale who has merely a decree confirming the master's report of sale without purporting to divest and vest title gets only the equitable title.**
In such a case the purchaser obtains an equitable title, the full beneficial interest, with the bare legal title outstanding, which he has the right to obtain on payment of the purchase money, or on performance of other conditions contained in the decree of confirmation, by application in the same case for an order on the master to make the deed, or by other supplemental proceedings to that end.

6. **Trusts. Dry trust defined.**
A dry or simple trust is one as to which the trustee has no duties to perform, and the cestui que trust has the entire management of the estate. By force of the statute of uses a trust by which the cestui que trust takes the entire beneficial use and the whole management of the estate and the trustee has no active duty to perform will not be sustained, but the whole title will pass to the cestui que trust. It is immaterial by what words a trust is created, if it imposes no active duties on the trustee, the statute of uses executes it immediately.

7. **Ejectment. The right to possession is essential to maintain ejectment.**
In an action in ejectment it appearing that the entire beneficial interest with right to possession of the property was vested in another, held the complainant could not recover.

8. **Sales. Chancery sale not complete until the confirmation of the report.**
A chancery sale in Tennessee is not complete until the confirmation of the report of the master.

9. **Sales. Where there is a confirmation of the master's report of sale without divestiture of title the naked legal title is left outstanding.**
In a case where there is a confirmation of the master's r port of sale, without a divestiture, and vestiture of title in the purchaser appearing by the decree or deed of the master, the naked legal title may be outstanding, but all the beneficial interest is in the purchaser.

10. **Pleading. The court looks to the substance of a pleading rather than the name.**
The court looks to the substance of a pleading rather than the name which the parties may give to it. There is no magic in forms or names in a court of equity.

Appeal from Chancery Court, Grundy County; Hon. T. L. Stewart, Chancellor.

Affirmed.

L. V. Woodlee, of Altamont, for appellant.

Foss H. Mercer, of McMinnville, for appellee.

FAW, P. J. This is an action of ejectment brought by bill filed on February 8, 1919, in the chancery court at Altamont, Grundy county, in which complainant Dreher alleges that he is the owner and entitled to the possession of a tract containing one hundred acres of land in the 2nd (formerly the 5th) Civil District of Grundy county, Tennessee (which land is described by metes and bounds in the bill), and that defendant, "through some inferior and spurious claim" has entered upon said land and has undertaken to take possession thereof, and has enclosed the same by wire fence, and is exercising acts of ownership thereover, and is thus casting a cloud over the title of complainant. The prayer of the bill is appropriate to its averments.

In his answer, filed June 24, 1919, the defendant admits that he is in possession of the land described in the bill, and has all, or a part, of it enclosed by a good and substantial wire fence, and is exercising acts of ownership over same, and he says that he has been so possessing said land for several years.

But defendant denies that complainant is the owner and entitled to the possession of said land, and he avers that complainant has no title thereto, nor to any part thereof.

Defendant avers that complainant's cause of action accrued more than seven years before the bill was filed in this cause, and before any suit was brought by complainant against defendant, and defendant pleads and relies upon the statutes of limitations of seven years as a complete bar to complainant's right of action.

Upon the issues thus formed the case went to proof, and, after proof had been taken on behalf of both parties, the defendant was,

on his application, permitted to amend his answer by adding thereto (what he termed) a "plea of estoppel," and in which amendment to the answer defendant avers, "that one J. M. Bouldin, by deed date June 17, 1868, sold and conveyed to one Wm. Rogers, 1500 acres of land, including the land in controversy in this cause, for the sum of $750, of which sum $250 was in hand paid, the balance to be paid in two equal installments of $250 each, due respectively in one and two years from date. See deed on file.

"That said Wm. Rogers having made default and failed to pay said deferred payments, the said J. M. Bouldin, on June 18, 1869, filed his bill in your Honor's court against said Wm. Rogers to enforce his lien or equity and have said land sold to pay the aforesaid deferred payments. That process was served on said Rogers on the 6th day of October, 1869; that said Rogers failed to make defense to said bill and pro confesso was taken against him, and such other proceedings were had in said cause that, on the 15th day of May, 1871, said Bouldin recovered a judgment against Rogers in said cause on said notes, and the court adjudged the same to be a lien on said land and directed the Clerk and Master to advertise and sell said land in said case said recovery was not satisfied, within three months; that said recovery was not satisfied and the Clerk and Master sold said land under said order of the court on the 4th day of December, 1871; when J. M. Bouldin became the purchaser that said sale and purchase of said land was duly reported by the Clerk and Master to the January term, 1872, of this court and in all things confirmed by the court; that the court on October 10, 1877, passed a decree correcting the decree confirming said sale by directing the Clerk and Master to make J. M. Bouldin a deed for said land, and that said Wm. Rogers did not convey to complainants the land in controversy until more than three years after the aforesaid sale of said land to J. M. Bouldin and the confirmation thereof by this court.

"Therefore defendant, Virgil Hill, insists and for plea says that Wm. Rogers would, by virtue of said sale and confirmation, be estopped from claiming said land, complainant being the vendee of said Wm. Rogers and being in direct privity with him is estopped from claiming the ownership of the lands in controversy and that complainant's bill should be dismissed.

"All the decrees or rather copies thereof in case of J. M. Bouldin v. Wm. Rogers, are filed in this cause by complainant to which reference is here had and made part of this plea. Also the original file in said cause is also in the file in which is the subpoena to answer on Wm. Rogers is found."

The Chancellor heard the case on the pleadings and proof, and thereupon dismissed the complainant's bill at his cost, whereupon

the complainant appealed to the Supreme Court, and the case was thereafter transferred by the Supreme Court to this court, and the complainant has assigned errors here.

In the chancery court complainant put in evidence registered muniments of title which (it was stipulated) covered the land in controversy, as follows:

(1) Grant No. 10411 for five thousand acres of land, issued August 5, 1849, by the State of Tennessee to. Davidson Tate and Jackson Tate.

(2) A general warranty deed, dated December 27, 1850, conveying fifteen hundred acres of land from Davidson Tate and Jackson Tate to Robert Tate.

(3) A deed made by John Tipton, sheriff of Grundy county, to J. M. Bouldin, dated September 9, 1868, for fifteen hundred acres of land, which deed (as appears from its recitals), was made pursuant to a sale by the sheriff on May 6, 1867, under a venditioni exponas issued from the circuit court of Grundy county, and based on an order of condemnation entered in said circuit court at the suit of one Wm. D. Dorris against Robert Tate, which suit had originated in a court of a Justice of the Peace where judgment had been rendered against Robert Tate and execution from said judgment had been levied on said fifteen hundred acres of land as the property of Robert Tate.

(4) A general warranty deed, dated June 17, 1868, conveying fifteen hundred acres of land, from J. M. Bouldin to Wm. Rogers.

(5) The record (consisting of the original bill and the decrees entered on the minutes of the court) in the suit brought by J. M. Bouldin against Wm. Rogers in the chancery court of Grundy county on June 18, 1869, as set forth in the amendment to defendant's answer which we have heretofore quoted, and to which record more particular reference will be hereinafter made.

(6) A general warranty deed, dated October 23, 1875, made by Wm. Rogers and wife to Carl F. Dreher, and purporting to convey a tract of one hundred acres of land which is identified as the particular tract of land in controversy in this case.

It appears from the undisputed testimony of the complainant C. E. (Charles E.) Dreher that Carl F. Dreher, the grantee named in the aforesaid deed made by Wm. Rogers, died several years before the bill in this case was filed, and that complainant is his son and "sole heir."

The defendant introduced in evidence Grant No. 5936, dated May. 24, 1837, by which the State of Tennessee granted to Steven Haight five thousand acres of land; and defendant proved by his witness W. H. Havron, county surveyor of Warren county, that the land in controversy was covered by said grant.

On cross-examination, defendant's said witness W. H. Havron, at the request of complainant's solicitor, filed as exhibits to his deposition two deeds as follows: (a) A deed dated December 4, 1893, with covenants of seisin and special warranty, executed by Martha Woodlee and husband John Woodlee, and W. J. F. Bouldin, and purporting to convey to J. B. Bouldin a tract of land containing fifteen hundred acres, and (b) a deed dated February 13, 1895, with covenants of seisin and general warranty, executed by J. B. Bouldin and wife M. E. Bouldin, and purporting to convey to Virgil Hill (the defendant) the tract of fifteen hundred acres described in the above-mentioned deed of Martha Bouldin and others to J. B. Bouldin.

It appears from the record that the tract of land which each of the last-mentioned two deeds purports to convey covers and includes the tract of one hundred acres which constitutes the subject-matter of this lawsuit.

The foregoing is an outline of the whole proof in the case. More of the details of certain parts of the evidence will be developed in the course of the statement of our views of the questions which arise on the record and are before us for decision.

However, before taking up the questions now in controversy, it may be well to say that the proof does not sustain the defendant's plea of the statute of limitations. This is, at least tacitly, conceded by defendant. The defendant was in possession of the land, and exercising acts of ownership over it, at the time complainant filed the bill in this case, but there is no evidence that defendant had been in the actual possession of the land, or any part of it, for as much as seven years before this suit was brought. The complainant introduced evidence which tends to show that the land for which he sues is mountain land, and that less than seven years before this suit was begun defendant went upon the land and enclosed it, or a considerable part of it, with a wire fence. This is the only proof with respect to the actual possession of the land by any one at any time.

1. The complainant assigns error upon the action of the Chancellor in permitting the defendant to amend his answer (in the manner hereinbefore stated) so as to plead an estoppel (by judgment, or decree, in the case of J. M. Bouldin v. Wm. Rogers).

The amendment was made in order that the defendant's pleading might conform to certain documentary proofs theretofore introduced by the complainant. "There is no limit to the character of the amendments that may be made to an answer, except that after one defense has been set up and proof taken thereon, the court will not allow another and inconsistent defense to be set up by way of amendment, or by a supplemental answer." Gibson's Suits

in Chancery (Rev. Ed.), sec. 435. (The boldface is ours). And pleadings may be amended at the hearing. Idem, sec. 539.

"Where, upon the hearing, it appears clearly from the evidence that the plaintiff has a case which entitles him to relief, but which by reason of some defect or omission in the charges or allegations of the bill is not brought fairly within the issue, he will be permitted to adapt the allegations of the bill to the case as proved; especially where the facts were known to the defendant, but were not disclosed in the answer or discovered by the plaintiff until after the production of the evidence." 1 Ency. of Pleading & Practice, pp. 485-486. And "upon the hearing of a cause, the same indulgence will be granted to a defendant as to a plaintiff, and if it appears that the defendant has not put in issue facts which he ought to have put in issue, and it must necessarily be in issue to enable the court to determine the merits of the case, he will be allowed to amend his answer for the purpose of stating those facts." Idem, p. 500.

The allowance of amendments is largely a matter resting in the sound discretion of the trial court, and in this instance we find no evidence of an abuse of that discretion.

2. It is argued in the brief for complainant that complainant's ancestor, through whom he claims, was an "innocent purchaser" of the land in dispute. If the doctrine of "innocent purchaser" was otherwise available to complainant (which we do not hold), it cannot avail the complainant here for the reason that there is no pleading asserting such claim. "The defense of innocent purchaser cannot be made at the hearing, unless set up by plea, or answer; and when set up in an answer must contain the same essential averments, and be otherwise as full and explicit, as though set up in a plea." Gibson's Suits in Chancery (Rev. Ed.), sec. 332.

3. In the chancery court the defendant relied on the aforesaid grant No. 5396 as an older and superior title to grant No. 10411, from which latter grant complainant deraigns title, and insisted that he had thereby established an outstanding title which should defeat a recovery for complainant. But, in the alternative, defendant insisted that if the court should hold, as contended for complainant, that complainant and defendant derived title from a common source, viz.: J. M. Bouldin, the complainant must nevertheless fail in his suit for the reasons hereinafter stated. The Chancellor held that the complainant and the defendant derived title from a common source, to which action of the court defendant excepted, but he did not appeal. However, for reasons which will be presently stated, the Chancellor dismissed complainant's bill, and the complainant's exception and prayer for an appeal is from "the action of the court in dismissing complainant's bill." Wheth-

er this is a broad appeal which brings up the whole case for review, including rulings adverse to the defendant (the successful party below), or is limited to a review of the action of the Chancellor in dismissing complainant's bill, we need not decide, for the reason that defendant-appellee has not assigned errors in this court. Taylor v. Elgin, 140 Tenn., 602, 610, 617, 621, 205 S. W., 428. On a broad appeal in a chancery case, the appellee may assign errors upon rulings of the Chancellor adverse to him, but in Taylor v. Elgin, supra, it was held that (as stated in the fifth headnote) "matters not contained in assignment of errors by appellee are not rendered reviewable by general discussion or even particular objection made later in the general argument accompanying the assignment of errors.

In the case now before us, defendant Hill does not expressly waive his exception made below to the aforesaid adverse ruling of the Chancellor, but he has not assigned error thereon, and, through the brief and argument of his counsel, he is earnestly contending that the decree dismissing complainant's bill should be affirmed upon the theory of the law and facts adopted by the Chancellor, which includes the finding that the complainant and defendant deraigned title to a common source, viz.: J. M. Bouldin, and we shall consider the case in that view.

4. As the parties both deraigned title to J. M. Bouldin, and complainant's deed was first made and first registered, complainant is entitled to recover unless he is cut off by the decree in the case of J. M. Bouldin v. Wm. Rogers, supra, confirming the sale made by the Clerk and Master to J. M. Bouldin.

On June 17, 1868, J. M. Bouldin had an absolute and indefeasible title to the tract of one hundred acres of land involved in the present case, and on that day he conveyed his entire estate in a tract of fifteen hundred acres, which included the premises in question, to Wm. Rogers, by a deed containing covenants of seisin and general warranty of title. The consideration for the conveyance was the sum of $750, of which $250 was paid at the time of the conveyance, and two notes for $250 each were executed for the balance of the purchase-price. This much appears on the face of the deed, but no lien was retained to secure the unpaid purchase money. After the maturity of the notes, and before Rogers had made any conveyance of the property, Bouldin, the vendor, filed a bill in the chancery court of Grundy county to obtain judgment on the notes and to enforce his vendor's equity by a sale of the land to satisfy the judgment sought. The bill was taken for confessed, and a decree was entered granting a recovery for $510 and costs, and ordering the Clerk and Master to sell the land "for cash and with the right of redemption." Later, the Clerk and

Master reported that he had sold the land, pursuant to the decree of sale, of J. M. Bouldin (the complainant in that case) at $545, and, there being no exceptions to the report, it was, by decree of the court, "in all things confirmed and ordered to be made a part of the record."

(The decree of confirmation did not purport to divest and vest title, and did not order the Clerk and Master to make a deed to the purchaser. It did nothing but confirm the Clerk and Master's report of sale, in the words above quoted). The decree of confirmation was entered on January 15, 1872. At the next term (April, 1872) an order was entered in the cause in these words: "In this cause it is ordered by the court that this cause go off the docket and the complainant will pay the costs, for which execution may issue."

On October 23, 1875, Wm. Rogers (the defendant and judgment-debtor in the above-mentioned case) executed a deed, with covenants of seisin and general warranty of title, for the land in controversy, to Carl F. Dreher. C. E. Dreher, the complainant in the present suit, is claiming the land as the sole heir-at-law of Carl F. Dreher, now deceased. The aforesaid deed from Wm. Rogers to Carl F. Dreher was duly registered on February 11, 1876.

On October 10, 1877, an order was entered on the minutes of the chancery court of Grundy county, under the style of the case of J. M. Bouldin v. Wm. Rogers, in these words: "This cause came on to be heard before the Hon. A. S. Marks, Chancellor, on the 10th of October, 1877, when it appeared to the court, from the inspection of the record, that at the January special term, 1872, of this court that there (was) a decree of the court confirming the sale of the land described in the pleadings in the cause, but, by mistake, there was no order of the court directing the Clerk and Master to make the deed of conveyance to J. M. Bouldin, the purchaser, but now, by way of correcting said decree, it is ordered (by) the court that the Clerk and Master make a deed to the purchaser J. M. Bouldin, describing said land by metes and bounds."

It does not appear, and it is not claimed, that notice was given to J. M. Bouldin, or any one for him, of the motion or application for the decree, or decretal order, last above-quoted, or that a deed was executed by the Clerk and Master pursuant to said order or decree.

On December 4, 1893, John Woodlee and wife Martha Woodlee, formerly Martha Bouldin, and W. J. F. Bouldin, executed a deed for fifteen hundred acres of land, with covenants of seisin and special warranty to J. B. Bouldin. This deed contains recitals to the effect, in substance, that the grantors are the heirs and representatives of "the late J. B. Bouldin, deceased, of Altamont, Grundy

county, Tennessee," and that said J. B. Bouldin, deceased, was the adopted son of J. M. Bouldin, and (in addition to a description by metes and bounds) the land conveyed is described as "the tract of land conveyed to J. M. Bouldin by John Tipton, sheriff of Grundy county, Tenn., and for a more definite locality reference is made to Book F, page 117, of land records for said county." This deed was duly registered on April 11, 1894, and includes the disputed land.

On February 13, 1895, J. B. Bouldin and wife executed a deed, containing covenants of seisin and general warranty of title, to Virgil Hill, the defendant in the present case, for the same fifteen hundred acres of land described in the aforesaid deed of Martha Woodlee and others to J. B. Bouldin. This latter deed was registered on February 14, 1895. On the foregoing facts, the question for decision is, who has the better title, complainant Dreher or defendant Hill?

At the time of the deed of Wm. Rogers to Carl F. Dreher, Rogers had only the naked legal title to the land in controversy. The full beneficial title, with the right to possession, was vested in J. M. Bouldin, the purchaser at the Clerk and Master's sale. In the case of Camp v. Riddle, 128 Tenn., 294, 302, 160 S. W., 844, the court, speaking (through Mr. Chief Justice Neil) with reference to the status of a purchaser at a chancery sale who has merely a decree confirming the master's report of sale without purporting to divest and vest title, said: "We are of the opinion that in such a case the purchaser obstains an equitable title, the full beneficiary interest, with the bare legal title outstanding, which he has the right to obtain on payment of the purchase money, or on performance of other conditions contained in the decree of confirmation, by application in the same case for an order on the master to make the deed, or by other supplemental proceedings to that end."

Dreher succeeded Rogers as the holder of the naked legal title, which he held as trustee for Bouldin, the purchaser, but as such trustee he had no duties whatever to perform for the benefit of the cestui que trust.

"A dry or simple trust is one as to which the trustee has no duties to perform, and the cestui que trust has the entire management of the estate. By force of the statute of uses a trust by which the cestui que trust takes the entire beneficial use and the whole management of the estate and the trustee has no active duty to perform will not be sustained, but the whole title will pass to the cestui que trust. It is immaterial by what words a trust is created, if it imposes no active duties on the trustee, the statute of uses executes it immediately. So where property is transferred to one for the use of or in trust for another and nothing more is

said, the legal estate joins the beneficial interest and rests in the cestui que trust. According to numerous decisions, a transfer in trust which comes within the statute of uses is in legal effect the same as if it had been made directly to the cestui que trust. The estate never vests in the trustee for a moment, but passes directly to the objects of the trust as soon as the will or deed takes effect. The interposition of the names of the trustee has no other legal operation than to make them the conduits through which the estate is to pass. There are, however, statements in the books to the effect that the uniting of the legal and equitable estates in a dry trust is subject to the option of the cestui que trust. Though no formal conveyance of the legal estate is necessary, the trust will be vacated and the conveyance decreed, because the nominal trust beclouds the title, and embarrasses the rights of alienation, which belong to the true owner. In general, whether a trust is nominal or passive and executed by the statute of uses, or active and not within the statute, depends on the necessity of the trustee holding the legal title to carry out the terms of the trust. If it is essential that the legal title remain in the trustee to enable him to perform the duties imposed by the trust instrument then the trust is active, but if his retention of the legal title is not essential to the performance of any duty imposed, the trust is passive, and the legal estate passes to the cestui que trust." 26 R. C. L., pp. 1173-1174.

But whether or not the trust was executed by operation of law and the "dry legal title" was thereby vested in Bouldin, is immaterial for the purposes of this case. It seems clear that the entire beneficial interest, with the right to the possession of the property, vested in J. M. Bouldin, the purchaser, upon the confirmation of the sale, and, not having the right to possession, complainant is not entitled to recover in ejectment. Shan. Code, sec. 4970, 4983, 4988; Brier Hill Collieries v. Gernt, 131 Tenn., 542, 552, 175 S. W., 560, 9 R. C. L., pp. 853-854, par. 22.

The case of Killough v. Warren (Tenn. Chy. App.), 58 S. W., 898, is in point, with respect to the effect of the decree confirming the sale without an express divestiture and vestiture of title. The opinion in that case was prepared by Judge Neil (afterwards Mr. Chief Justice Neil) and the authorities are there collated in the manner characteristic of that great judge. Killough v. Warren, was an action of ejectment in the chancery court, and the parties deraigned title to a common source. The defendants relied on a decree in a former case which confirmed a sale by the Clerk and Master but did not divest and vest title and did not direct the Clerk and Master to make deed to the purchaser. In that opinion the court (at page 905) said:

"It is also objected in the assignment of errors that title was not divested and vested when the sale was confirmed or at any

time. But this is immaterial. The report of sale showed that the land had been sold to W. B. Russell, and that report was confirmed. 'The authorities in this State are that a chancery sale is not complete until a confirmation of the report of the master, and it is then complete. Eakin v. Humbert, 4 Cold., 116; Childress v. Hurt, 2 Swan., 487; Myers v. Lindsley, 5 Lea, 334, 335; Wood v. Morgan, 4 Humph., 372; Morton v. Sloan, 11 Humph., 278; Pearson v. Johnson, 2 Sneed, 583; Polk v. Pledge, 5 Cold., 389; Johnson v. Johnson, 2 Heisk., 526; Atkinson v. Murfree, 1 Tenn. Chy., 54, 55; Reece v. Copeland, 6 Lea, 192. It seems that in case of personal property the sale is complete without confirmation. Saunders v. Stallings, 5 Heisk., 65. It is held with regard to both realty and personalty that the devesting and vesting of title is not necessary to complete the sale, the report of the master being confirmed. Jones v. Walkup, 5 Sneed, 135; Curd v. Bonner, 4 Cold., 632, 639, 640; Graves v. Keaton, 3 Cold., 8, 13; Young v. Thompson, 2 Cold., 596; Cowden v. Pitts, 2 Baxt., 60; Paul v. York, 1 Tenn. Ch., 560. It follows from these authorities that when the Clerk and Master's report was confirmed the sale became complete. We may add, further, with regard to the subject of devesting and vesting title, that section 5915 of Shannon's Code, provides as follows: 'The courts of this State having jurisdiction to sell lands, instead of ordering parties to convey, may devest and vest title directly by decree, or empower the clerk to make title.' The next section reads: 'The decree or deed of the clerk, as the case may be, shall have the same force and effect as a conveyance by the party, and shall be registered.' Now, suppose the court instead of devesting and vesting title in the decree should direct the master to make a deed to the purchaser. This, of course, could only be done upon confirmation of the sale. But would it be held that the sale was not complete until after the master had made the deed? This position would not be tenable, under the authorities above referred to. It is true that in a case where there is a confirmation of the master's report of sale, without a divestiture, and vestiture of title in the purchaser, appearing by the decree or deed of the master, the naked legal title may be outstanding, but all the beneficial interest is in the purchaser.' The foregoing quotation is an excerpt from opinion of this court in the case of Williams v. Clark (Putnam county, Nashville, November 19, 1898), 51 S. W., 130. The matter in controversy there was standing timber, which was treated as realty. It appeared that the master's report in the case there under examination was confirmed, but there was no formal devestiture and vestiture of title. In a written opinion filed with the record in that case, and affirming the decree of the court of chancery appeals, the Supreme Court went further than

this court, and used this language: 'It is well-settled in this state that vesting and devesting title by decree is not necessary to pass title either to realty or personalty, but that the sale is complete upon confirmation of the report. It follows in this case that when the Clerk and Master's report was confirmed the sale was complete, and the purchaser acquired title to all the merchantable timber of the particular quality in that tract, notwithstanding the decree undertook to vest and divest title to a particular number only.' Opinion by Mr. Justice McAlister.

"It follows that, upon confirmation of the master's report of sale in F. B. Russell against David Hunter et al., the title to the land purchased by W. B. Russell passed to him. But, even if this were not true, the same result would be reached in another way; that is, the whole beneficial interest would have passed to W. B. Russell, the purchaser at the master's sale, and the naked title would be outstanding in the trustee, Horatio Clagett. So, inasmuch as the complainants cannot overturn the proceedings in F. B. Russell against David Hunter et al., on this collateral attack, it appears that they have no title, legal or equitable, and they cannot recover."

As we have seen, the defendant in the instant case (by the amendment to his answer) pleaded the proceedings and decree in the case of J. M. Bouldin v. Wm. Rogers as a defense to complainant's bill. The defendant styled the defense which he thus interposed, by way of amendment to his answer, a "plea of estoppel," and we are not prepared to say that the name thus given to this "plea" is inaccurate, for "the doctrine of res judicata is grounded in estoppel" (15 R. C. L., p. 953, par. 429); and "the foundation principle upon which the doctrine of res judicata rests is that parties ought not to be permitted to litigate the same issue more than once; that, when a right or fact has been judicially tried and determined by a court of competent jurisdiction, or an opportunity for such trial has been given, the judgment of the court, so long as it remains unreversed, should be conclusive upon the parties, and **those in privity with them in law or estate**." Idem, par. 430. (The boldface is ours).

However, the court looks to the substance of a pleading rather than the name which the parties may give to it. "There is no magic in forms or names in a court of equity." Gibson's Suits in Chancery (Rev. Ed.), sec. 269, note 14 and cases there cited.

We concur in the view of the Chancellor that the decree in the case of J. M. Bouldin v. Wm. Rogers, affords the defendant a sufficient defense to complainant's bill, and that complainant must therefore fail in his suit.

5. The doctrine of lis pendens (concerning which there is some discussion in the briefs) does not apply in this case. There was

no suit pending at the time Dreher took his deed from Rogers. At that time the case of J. M. Bouldin v. Wm. Rogers, had ended and had been retired from the docket by order of the court. Wilkins v. McCorkle, 112 Tenn., 688, 707, 80 S. W., 834.

We have not treated the decretal order of October 10, 1877, hereinbefore quoted, as of any effect. The case had gone off the docket nearly six years prior to the time that order was made, and, by the express requirement of Shannon's Code, sec. 4599, it was essential that the "adverse party" have ten days notice of the application for the order. And such notice was a jurisdictional fact which it was necessary to show in the order. Carney v. McDonald, 10 Heisk., 232, 236.

But Dreher, the vendee of Wm. Rogers, was affected with constructive notice of the decree of January 15, 1872, confirming the sale of the land to J. M. Bouldin. The entry of that decree upon the record books of the court in which it was rendered answered all the purposes of registration. Wilkins v. McCorkle, supra, page 706; Johnson v. Covington, 148 Tenn., 47, 63, 251 S. W., 893. Complainant is a privy in estate with Wm. Rogers, and the rights of creditors are not involved as in Willis v. Rust, 4 Hig., 278.

6. It results that the complainant's assignments of error are overruled, and the decree of the Chancellor dismissing complainant's bill and adjudging the costs (not previously adjudged) against the complainant and the surety on his cost bond is affirmed, and decree will be entered accordingly. The costs of the appeal will be adjudged against the complainant Dreher and the surety on his appeal bond.

Crownover and DeWitt, JJ., concur.