E. F. LANGFORD *v.* T. J. HUDSON *et al.**

(*Nashville.* December Term, 1921.)

1. **CROPS. Execution. Growing crops are personalty subject to sale by execution or otherwise without passing any interest in the land.**

At common law growing crops are personal property, and are subject to sale by execution or otherwise without passing any interest in the land. (*Post, p.* 312.)

Cases cited and approved: Carson v. Browder, 70 Tenn., 701; Edwards v. Thompson, 85 Tenn., 720.

2. **CROPS. Sale of land carries with it growing crops unless excepted.**

On the sale of land, either private or judicial, a conveyance passing title to the land carries with it growing crops thereon, unless they are specially excepted from the conveyance. (*Post, p.* 313.)

3. **EXECUTORS AND ADMINISTRATORS. Wills. Growing crops go to devisee and to personal representative of intestate landowner.**

If a landowner dies testate, growing crops pass with land to a devisee, but if he dies intestate they go to his personal representative. (*Post, pp.* 313.)

Cases cited and approved: Pickens v. Reed, 31 Tenn., 80; Shofner v. Shofner, 37 Tenn., 95; Vaughn v. Vaughn, 88 Tenn., 745.

4. **VENDOR AND PURCHASER. Title to growing crops held to go to purchaser of land at sale under vendor's lien.**

Where a vendor of land retained a vendor's lien in a deed, and afterwards, in the exercise of power conferred in the deed, sold the land to a purchaser, who immediately took charge of the land under

---

*On right to crops growing on, or rental of, real estate sold upon contract, see notes in 35 L. R. A. (N. S.), 1066; 38 L. R. A. (N. S.), 420.

On conveyance of land as including crops, see notes in 23 L. R. A , 451; L. R. A., 1917C, 35,

a memorandum contract reciting the fact of sale, the purchaser took title to crops then unsevered, whether matured or not, regardless of the fact that they were harvested before the execution of deed from the vendor to the purchaser about a month after the sale. (*Post, pp.* 313-318.)

Cases cited and approved: Oldham v. Kennedy, 22 Tenn., 262; Pickens v. Reed, 31 Tenn., 80; Speicher v. Lacy, 28 Okla., 541.
Case cited and distinguished: Barker v. Smith, 35 Tenn., 289.

## FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—HON. JOHN T. LELLYETT, Chancellor.

HART, THOMAS & CUMMINGS and W. C. CHERRY, for plaintiff.

WM. S. NOBLE and TRUE & DORSEY, for defendants.

MR. L. D. SMITH, Special Justice, delivered the opinion of the Court.

This case presents a question of priority of lien on growing crops between the purchaser at a sale of the land made to enforce a vendor's lien, which was retained in the deed, and the mortgagee under a mortgage made by the vendee subsequent to the recording of the deed which retained the vendor's lien.

The question arises in the following way: J. C. Satterfield, on October 12, 1917, being the owner of the land, sold and conveyed it to one Edward T. Webb. Notes were executed by Webb for $5,500 of the purchase price, to secure

Langford v. Hudson.

the payment of which a vendor's lien was expressly retained in the deed. The deed expressly authorized the lawful holder of the notes, upon default in the payment thereof, to enforce the lien reserved in the deed by a sale of the land at public auction. The deed further provided that, in case of a sale of the land to enforce the vendor's lien, and the continuance in possession by the vendee, such possession should be held as a tenant of the purchaser, and the possession was to be yielded immediately upon demand of the purchaser, and giving to the purchaser, on the failure to yield possession, the right to secure the same by means of forcible or unlawful detainer proceedings.

On May 6, 1918, the Webbs conveyed this same land to defendant T. J. Hudson, who, as a part consideration, agreed to assume and pay the unpaid purchase money to Satterfield.

The defendant Hudson leased portions of the land to the defendants Matthews and Reeder, who planted and cultivated crops of corn, cotton, and tobacco, Hudson to receive as rent a certain portion of the crops grown thereon.

After Hudson purchased the land he made three mortgages to the defendant McMurray Tobacco Company, one in February, another in May, and another in July, by which he conveyed certain portions of the tobacco crops growing on the land.

On August 21, 1919, the holder of the purchase money notes, exercising the power conferred in the deed, sold the land as provided therein to the complainant, executing to him a memorandum contract reciting the fact of the sale to the complainant, and in which it was agreed that the deed would be executed as soon as practicable, but the deed was not actually delivered until the 24th of September.

However, immediately upon his purchase, on August 24th, the complainant took charge of the property and began to exercise acts of ownership.

Between the date of complainant's purchase on August 21st and the execution of the deed on September 24th following, the tobacco crop had been harvested and garnered. The corn and cotton were still in the field unharvested when the deed was executed on the 24th of September.

The McMurray Tobacco Company claims that the title to the crop did not pass to the purchaser at the sale until the execution of the deed, and their mortgage, having been recorded prior to the sale, immediately attached when the crop was severed from the ground, and that therefore the lien under their mortgages is superior to that of the purchaser at the sale to enforce the vendor's lien.

Hudson claims that he is entitled to the corn and cotton rent, on the ground that growing crops are personal property, and the same did not pass by the sale of the land, particularly because the crops were matured at that time, though not severed from the land.

The rights of the tenants to their share of the crop are not now involved, their rights thereto having been conceded.

The precise questions arising upon this state of facts have not heretofore been decided in any reported decision of this court, so far as we have been able to ascertain.

Under the common law as applied in this country, growing crops are personal property, and are subject to sale by execution or otherwise, without passing any interest in the land. *Carson* v. *Browder*, 2 Lea, 701; *Edwards* v. *Thompson*, 1 Pickle (85 Tenn.), 720, 4 S. W., 913, 4 Am. St. Rep., 807.

While this is so, being appurtenant to the land, crops partake of the nature of realty, so that, by a sale of the land, whether private or judicial, the conveyance passing the title to the land carries with it the growing crops unless they are specially excepted from the conveyance. *Pickens* v. *Reed*, 1 Swan, 80. And so, if the owner of the land die testate, the growing crops pass with the land to the devisee, although if he die intestate it would go to his personal representative rather than to the heirs. *Shofner* v. *Shofner*, 5 Sneed, 95.

In *Vaughn* v. *Vaughn*, 88 Tenn., 745, 13 S. W., 1089, it was held the widow to whom homestead has been assigned is entitled to the crops growing upon the land at the husband's death and when the assignment of homestead is made.

On principle and under the cases referred to a lien retained on the land by the deed to secure the purchase money attaches to the growing crops while they remain attached to the land, and the sale of the land while the crops were still attached thereto and unsevered from the ground passed the title to such crops to the purchaser of the land. So that, so far as the corn and cotton which was still standing on the land when the deed was executed in September are concerned, the title thereto clearly passed to the complainant, unless it could be said they are to be excepted from the general rule by reason of having matured before the date of the sale. It has been held in some jurisdictions that a conveyance of land only carries the crops that are still growing and drawing nutriment from the soil, and not the crops that are ripe and ready to harvest. In most of the cases where this question has arisen it has been held that the state of maturity of the crop is not controlling,

and that, until a crop is severed from the land on which it is grown, it is such a part of the real estate as will pass by conveyance or devise of the land, notwithstanding it may be fully matured at the date of the conveyance. This, we think, is the better rule. There is entirely too much uncertainty about when a crop ceases to draw nutriment from the soil, and by such a rule innumerable controversies would arise. It is better to apply the well-recognized distinction between real and personal property in cases of this sort, that whatever is permanently attached to the soil passes with a conveyance of the land. 8 R. C. L., 360.

The McMurray Tobacco Company contend that, the tobacco having been harvested prior to the execution of the deed, the title thereto did not pass to the purchaser under the sale made in August, upon the theory that the title did not pass until the deed was executed.

The written memorandum contract of sale shows that the land was actually sold to the complainant on August 21st. Although the legal title did not pass at that time by conveyance, certainly the right existed thereunder in the purchaser to demand a conveyance. The purchaser was entitled to have the contract of sale specifically performed. He did in fact assume control of the land, and the conclusion of the court of civil appeals that he took possession is a justifiable inference from the proof. This sale to and purchase by the complainant was in equity an executed sale; it passed to the purchaser the equitable title, the legal title being held until the execution of the deed for his use and benefit. Under such circumstances the court will apply the equitable doctrine which treats things agreed to be done as actually performed. Therefore we hold that by the contract of sale of August 21, 1919, the

complainant acquired the title to the land, which carried with it the title to the crops growing thereon at the time.

This principle was recognized and applied in the case of *Barker v. Smith,* 3 Sneed, 289. In that case Barker, the owner of the land, executed a title bond to Smith, wherein it was recited that the said Smith had purchased from Barker, for a consideration to be paid on certain dates in the future, a certain described tract of land, by which Barker obligated himself to make or cause to be made a good and sufficient title, and to deliver possession to Smith on the 1st of September, 1854. This title bond was dated the 18th of May, 1854. On the 18th of June thereafter, and before the execution of the deed, a number of the buildings on the land were destroyed by fire. Smith sued upon the covenants of the contract, alleging as a breach thereof the failure and inability of Barker to deliver possession by reason of the destruction of the buildings by fire. The court, in deciding that Smith was not entitled to recover, held that the equitable title to the property passed to and was vested in Smith from the time of the execution of the title bond. The court said:

"And, being the equitable owners of the property, the doctrine seems to be, that in case of loss by fire, or other accident by which the value of the estate is lessened, after the contract and before it is completed, and no fault on either side, the loss falls upon the purchaser, and on the other hand, he will be entitled to any benefit that may accrue to the estate in the interval."

The doctrine thus applied was said to rest "upon the principle, that the purchaser is in equity the owner of the estate, and its application to the case under consideration cannot be affected by the stipulation that the possession

of the property was not to be delivered till a future day. The equitable title having passed, in the absence of any implication to the contrary, arising from the terms, or legal effect of the contract, the risk must likewise be understood to have passed to the purchaser." See, also, *Oldham* v. *Kennedy*, 3 Humph., 262. · It would seem to follow logically, if this equitable doctrine is applicable in the case of a contract such as was involved in the case of *Barker* v. *Smith*, so as to make the purchaser liable for loss, occurring thereafter, and before the execution of the deed, that it should be applied so as to give the purchaser the benefit of the emblements of the property.

The application of this doctrine to a case of this sort was recognized by the court in the case of *Pickens* v. *Reed*, 1 Swan, 80, though not applicable to the facts of that case. In that case the plaintiffs were commissioners of the school land and common school fund, and in their official character, and having authority to do so, leased certain school lands to the defendant for the year 1849, for which they were to receive a certain portion of the crop as rent. During the year 1849 these lands were brought to sale under provision of the laws authorizing it. The sale was made by the clerk in accordance with the statute on the 18th of September, 1849, but the sale was not confirmed by the court until 1850. The lessee refused to pay the rent, contending that the title to the land passed by the sale made as of the date thereof, to-wit, 18th of September, 1849, but this court held that no sale could be made under the law unless it was confirmed by the court; this confirmation was essential to the sale; and that therefore there was no real sale of the land until it was confirmed, and the purchaser had no right to demand a title sooner than its con-

firmation, and, therefore, having neither the legal nor the equitable title, he could not demand the rents merely by virtue of having become a conditional purchaser at the clerk's sale. The court said:

"It is certainly true, as a general rule, that a sale and conveyance of land, upon which there is a growing crop by the owner of both the land and crop, carries with it to the purchaser, the interest in the crop as much as in the land. . . . But this principle has no application to the case under consideration. Here, the legal estate did not pass to the purchaser. On the contrary, by the express provision of the law, the title is reserved in the State until payment of the purchase money."

The precise point under consideration was ruled in accord with what we have said in this case by the supreme court of Oklahoma, in *Speicher* v. *Lacy,* reported in 28 Okl., 541, 115 Pac., 271, 35 L. R. A. (N. S.), 1066.

It is pointed out in the notes appearing under the above report of the case just cited that in some cases the question is made to depend upon the right to immediate possession of the land, and upon whether the contract is executed or executory, and upon some other considerations. Whether these distinctions are all sound we need not say. It is sufficient to say that the rule is deemed sound and in accord with former decisions of this court, which treats a contract for the purchase of land as passing the title with respect to growing crops when it vests in the purchaser the equitable title to the land; that is to say, where by the contract a sale is actually completed, and the contract requires only the execution of the deed to transfer the title in accordance with the contract. Such is the instant case. The soundness of the rule is illustrated by the

exceptions such as we have referred to, and such as the one involved in *Pickens* v. *Reed,* supra.  Another exception which illustrates the soundness of the rule is where land is sold subject to the right of redemption, the owner of the land remaining in possession of the land in the meantime. Cases of this sort are referred to in 3 Jones on Mortgages, section 1659, wherein it is said:

"The rents accruing between the day of sale and the delivery of the deed belong to the owner of the equity of redemption, and not to the purchaser, as they go with the possession or the right of possession."

This author also cites cases in support of the proposition that—"The purchaser is entitled to the rents and profits from the time that he becomes vested with the title and right of possession."

Under the principles stated the plaintiff was entitled to recover.  The court of civil appeals so decreed, and the action of that court is in all respects affirmed, with costs.