J. W. AKIN v. A. R. EGNER, et al.

Middle Section. June 9, 1928.

No petition for Certiorari was filed.

W. W. Courtney, of Franklin, for appellant.
J. C. Eggleston and W. J. Smith, of Franklin, for appellee.

SENTER, J. In this cause it appears that complainant Akin and wife sold and conveyed to A. R. Egner a tract of land situated in Williamson county, Tennessee, on September 26, 1925, for the recited consideration of $7500; $1550 cash, and the assumption by the grantees of a mortgage indebtedness on the land in the sum of $3,846.75, payable to the Federal Land Bank of Louisville, Kentucky, and for the balance executed four deferred purchase payment notes, three for the sum of $525.81 each and one for the sum of $525.82. The deferred payment notes were made payable one, two, three and four years from date, respectively. The bill alleged that the first deferred payment note was past due and unpaid, together with the interest thereon, and that said notes provided for the expenses of collection, including attorneys fees.

The bill further alleges that after Egner and wife bought said property that they executed a trust deed on the same, subject to the other encumbrances thereon, to secure John Frederick in a loan of $1750, represented by note for said amount, payable to Frederick. The bill further alleges that the defendant Egner and wife have abandoned said property and had removed from the state of Tennessee, and had refused to pay the past due deferred payment note, and had stated that it was their intention not to make any further payments on the same. The bill alleges that defendant William Lunn then occupied the premises, by a lease, sufferance or otherwise, the nature of which complainant is not informed; that there is a growing crop of corn of about fifty acres on the premises, and complainant alleges that his vendors lien covers said growing crop, and that the bill being filed before said crop is gathered or severed, that complainant is entitled to have a receiver appointed to take charge of the premises pending the sale prayed for, and to harvest and gather the growing crop so that complainant may obtain the benefit thereof in partial satisfaction of his said note; complainant alleges that his security is inadequate, and it is doubtful whether the premises will sell for a sum sufficient to cover the first mortgage indebtedness, and the amount due him on the past due note. The bill prays that a receiver be appointed with the filing of the bill to take charge of and gather the growing crop on the land when the same becomes ready for harvest, and also writ of injunction to enjoin and restrain Lunn from disposing of or encumbering the growing crop; and prays for a judgment against Egner and wife for the past due and unpaid note, interest and attorneys fees, and for a sale of the property subject to the prior encumbrance thereon.

The original bill was filed September 29, 1926, and on the same date a writ of injunction was issued and served on defendant Lunn

as prayed for. On the same date that the bill was marked filed the Chancellor, by endorsement on the bill, appointed the Clerk and Master of the chancery court receiver to take charge of the real estate described in the bill and the growing crops thereon "until further orders of the court."

William Lunn filed a separate answer to the bill, and by the answer alleged that John Frederick, who had died prior to the filing of the bill, had furnished to Egner and wife $1750, which was paid on the property, and that Egner and wife appointed John Frederick their agent to look after and care for the property after Egner and wife removed from the state of Tennessee; that in pursuance of that authority, Frederick, now deceased, rented the property to defendant Lunn for the year 1926 under a written contract, which contract was approved by Egner and wife, and by the terms of which the crops grown on the place were to be equally divided, Lunn to receive one-half of all crops grown by him and Egner and wife to receive one-half; that under this contract Lunn cultivated the corn crop of about fifty acres. The answer denies that complainant has a lien on his share of the crop and denies that complainants vendors lien covers his share of the crop, and denies that the complainant was entitled to have the receiver appointed to take charge of said crop, harvest and gather the same, and denies that complainant is entitled to have a receiver appointed that would in any way interfere with his interest and rights in the crop.

The defendant Lunn further averred in his answer that in the event he should be mistaken with reference to his contention made to the effect that complainant's vendor's lien did not cover the growing crops grown by him, etc., and to the end that the rights of all the parties may be determined, he prays that the administrator of John Frederick, deceased, be made a party to the suit, and that this answer be made a cross-bill, and that in the event it should be held that complainant was entitled to a lien on his share of the crop grown by him, that he be given a judgment against the estate of John Frederick, deceased, for the value of his interest in the crop. Lunn filed an amended cross-bill setting out more in detail his contract and agreement with Frederick, and that he had cultivated and grown the crop of corn involved, and other allegations unnecessary to refer to further.

There is a finding of the facts by the Chancellor filed with the record. The Chancellor found that John Frederick, now deceased, acting as agent for Egner and wife, the owners of the property, rented the property described in the pleadings to defendant and cross-complainant, William C. Lunn, for the year 1926, by a written contract, and that under the terms of the contract Lunn was to

have one-half of all crops produced on the place and Egner and wife to have the other half; Egner and wife to pay for one-half of the baling of hay, and that this contract was approved by Egner and wife; that in pursuance of said contract the defendant and cross-complainant, Lunn, cultivated the land and produced a crop of corn on the land, and that the corn had been gathered by the receiver.

The Chancellor held and so decreed that Lunn was entitled to receive one-half of the proceeds arising from the sale of the corn grown on the place and sold by the receiver, and that Lunn, under the farm laborers lien law, held superior rights to the one-half interest in the crop over complainant's claim. From this decree of the Chancellor the original complainant has appealed to this court and has assigned errors.

The assignments of error are as follows:

"First: The court erred in declining to find and decree that the lien of the vendors notes covered the growing corn and that complainant was entitled to said corn or the proceeds of the sale thereof, inasmuch as the foreclosure proceedings, were instituted, the bill filed and the receiver put in charge before maturity and before severance.

"Second: The court erred in finding and decreeing that cross-complainant and appellee, W. C. Lunn, had a farm laborers lien or other lien, upon said corn, superior to the rights and lien of complainant and appellant, J. W. Akin; in rendering judgment in favor of said Lunn for one-half of the proceeds of the sale of said corn, and in taxing said Akin with the costs."

Under the first assignment of error it is the contention of appellant that the vendor's lien retained in the notes and in the deed to secure the notes covered all growing crops not gathered or severed from the land at the time the original bill was filed in the cause and a receiver appointed. In support of this contention the following authorities are cited: 27 Cyc., 1247; White v. Pulley, 27 Fed., 436; 39 Cyc., 1806; Johnston v. Smith, 70 Ala., 108; Killebrew v. Hine, 104 N. C., 182; 1 Washburn on Real Property, 144; Wilsie Mortgage Foreclosure, 587; 1 Thompson on Real Property, Sec. 129. The following Tennessee cases are also cited and relied upon by appellant: Langford v. Hudson, 146 Tenn., 309; Henshaw v. Wells, 9 Hum., 567; Moore v. Knight, 6 Lea, 427. From these authorities it appears to be the settled rule that growing crops are considered for some purposes as part of the realty, and may be covered by the lien of a mortgage, or a vendor's lien. In 27 Cyc., 1247, it is thus stated: "While growing crops are considered for some purposes as a part of the realty, and may be covered by the lien of a mortgage, yet the mortgagor is the owner of all crops sown,

564

grown or harvested before foreclosure, with full power to sell or mortgage the same unless the crops are specially pledged by the mortgage or the disposition of the proceeds expressly covered by it, and this right continues until foreclosure, entry for the purpose of foreclosure or the appointment of a receiver, whereupon the rights to the unsevered crops or other products of the land passes to the mortgagee as a part of the property liable to the satisfaction of his claim.''

In 39 Cyc., page 1806 (citing Johnson v. Smith, 70 Ala., 108, and Killebrew v. Hine, 104 N. C., 102), it is said: ''A vendor's lien does not attach to crops after they have been gathered, but it does attach to growing crops, and of course a lien on the crops may be expressly reserved.''

In the case of Jones v. Adams, 50 L. R. A., 338 (Ore.), (another case relied upon by appellant), it is said:

''Until foreclosure and sale, a mortgagor of real estate is entitled to the possession, rent, issues, and profits therefrom. He has an absolute right to all annual crops planted or owned by him and if they are severed before the sale he is under no liability to account for them to the mortgagee or purchaser. . . .''

A much stronger statement of the rule is contained in Wiltsie on Mortgage Foreclosure, Sec. 567, where it is said:

''The crops growing on the land, as well as the land, are held as security for the mortgage debt, and on the foreclosure of the mortgage whatever crops are then growing upon the mortgage premises, if planted subsequent to the making of the mortgage, will pass to the purchaser at the sale, whether they were planted by the mortgagor or his tenant, free from all claim upon them by said mortgagor or tenant, and on proper application under some circumstances the court will provide for their preservation until possession is given to the purchaser.''

The authority last quoted states that the rule applies where the crop is planted ''subsequent'' to the making of the mortgage.

In Langford v. Hudson, 146 Tenn., 309, our court discussed the question of the crops of the owner being alone involved, and stated:

''On principle and under the cases referred to, a lien retained on the land by the deed to secure the purchase money attaches to the growing crops while they remain attached to the land, and the sale of the land while the crops were still attached thereto and unsevered from the ground passed the title to such crops to the purchaser of the land.''

In Langford v. Hudson, supra, the court proceeds to state: "The rights of the tenants to their share of the crop are not involved, their rights thereto having been conceded."

The Landford v. Hudson case follows the general rule that the growing crops on the land at the time of the sale goes to the purchaser, but as above stated does not even make that adjudication as against the share of tenants in the growing crops, even though the crops remains ungathered or unharvested at the time.

In the present case it appears that the original bill was filed on September 29, 1926, and the land was not sold until February, 1927. The receiver was appointed and took charge of the crops on the date the bill was filed. No notice was given of the application for the appointment of a receiver, and we do not think there are sufficient averments in the original bill to entitle complainant to a receiver to take charge of, gather and sell the growing crops. The original bill on this subject charges: "Complainant states that his security is inadequate, and that it is doubtful whether or not the premises will sell for a sum sufficient to cover the first mortgage indebtedness and the amount due him on his note that is due and payable." (Morford v. Hamner, 3 Baxter, 391). We think it well settled that growing crops, if fructus industriales, are chattels. (2 Lea), 701, 85 Tenn., 721; Kimball v. Sattley, 45 Am. Rep., 616, Parner v. Pearcy, 17 Am. Rep., 591.

We are also of the opinion that, the owner of the land would have the clear right to sell the growing crops, annually planted, prior to a foreclosure either by the enforcement of the vendors lien, or a sale under a trust deed or mortgage, and such sale would be good as against the vendors lien in the land or the mortgagee's lien given by the mortgage on the land. We think it equally true that where the owner enters into a contract for the cultivation of the land, while he is in possession, and the vendors liens notes are not due, that the tenant who cultivates the land for the year under a share croppers contract would be entitled to reap the fruits of own labor, and that in the absence of a specific provision in the deed in which a vendors lien is retained that the annual crops would be liable, or subject to be paid on the annually maturing notes, that such tenant would have the superior rights in his share of the crop grown under his contract with the owner. If this were not true the share cropper who cultivates the land under a contract with the owner of the land would have to procure the approval of his contract by the lien holder, the vendor, or if under a mortgage or trust deed, the owner of the debt secured by the trust deed, before he could invest his time and labor in the cultivation of the crop. It would be a hard rule, and certainly inequitable if the tenants

share of the crop could be appropriated by the vendors lien holder to the payment of the vendees purchase money notes.

However, under the facts of the case we now have before us the crop of corn was mature and practically ready to be gathered at the time the original bill was filed. The crop was gathered, and by the very nature of the crop it had to be gathered, during the fall of 1926. If it had remained in the field until February, 1927, it would have become worthless, and this statement is made from common knowledge and observation. The land was not sold until February, 1927. We do not have here the question of the rights of the purchaser to this growing crop in the first place, but the rights as between the holder of the vendors lien to the proceeds of the crop.

In Edwards v. Thompson, supra, opinion by the late Judge Caldwell, it is said:

"Growing crops, when fructus industriales,—the product of annual planting, such as corn, wheat, rye, potatoes, etc., are personal property." (Citing Carson v. Browder, 2 Lea, 701, and other authorities).

We are therefore of the opinion, that independent of the statute on the subject of the Farm Laborers Lien Law, (Shannon's Code, Secs. 3567, 3568, and 3569) the complainant could not subject the one-half interest of Lunn in the crops sold by the receiver to the payment of the land note, for the reasons hereinbefore set out. However, we are of the opinion that the language used in the statute referred to as the Farm Laborers Lien Law, continues the lien in force for three months from November 15th of the year in which the farm labor devoted to the cultivation of the crop is performed. We cannot agree to the contention made by appellant to the effect that this lien does not attach to the crop until the 15th day of November. We are of the opinion that the clear intention of the statute is, that the lien continues from the time the crop is planted until three months after November 15th of the year in which the labor on the crop is performed, and that this lien is second alone to the landlords lien as provided by the Act.

Other questions are made, but we deem it unnecessary to consider them further. We find no error in the decree of the Chancellor, and the assignments of error are overruled and the decree is affirmed. Appellant and surety on the appeal bond will pay the cost of this appeal.

Owen and Heiskell, JJ., concur.