## SHELBY COUNTY v. J. H. ADAMS AND WIFE.

Western Section.    March 3, 1932.

Petition for Certiorari denied by Supreme Court, July 2, 1932.

L. D. Bejach, of Memphis, for plaintiff in error.
L. E. Farley, of Memphis, for defendant in error.

HEISKELL, J. This is a suit by James H. Adams and his wife, Minnie Adams, against Shelby county to recover the value of certain land taken for highway purposes and incidental damages caused by such taking.

The case was tried before a jury and there was a verdict for the plaintiff for $375, value of the land taken, and $875 incidental damages and judgment accordingly for $1250 from which the county has appealed and assigned errors.

Plaintiffs owned a six acre tract of land in Shelby county a short distance out of the City of Memphis, fronting 478.4 feet on the north side of Poplar Pike, also known as Highway No. 57, on which they had operated for several years a nursery of evergreen trees, plants and shrubs, the property having been purchased by them in 1916, for a consideration of nine thousand dollars.

In the month of September, 1930, a strip of ground twenty-five feet in width along the entire frontage of plaintiff's property was taken and incorporated in Poplar Pike or Highway 57, a public highway in said county. The land so taken comprised about one-fourth of an acre. On this strip at the time or just before it was

taken, plaintiffs had growing nursery stock, comprising 544 trees of various kinds.

Mr. Adams claimed that in order to save his shrubs and minimize the damage as much as possible, he moved the nursery stock and that owing to the drouth prevailing, many of the shrubs died and others were damaged in value. He also claimed other items of incidental damage which may be discussed later. The defendant filed several pleas, not guilty, nil debit, and that plaintiffs did not own the land in question. Then afterwards another plea was filed, setting up as a defense, the provisions of Chapter 57, Public Acts of 1931. Plaintiff demurred to this additional plea on the ground that said Act did not apply to this case and that if it did apply, it was unconstitutional. The court sustained the demurrers on the ground that the act was unconstitutional. If it is necessary to pass upon the constitutionality of this statute, then this case must be transferred to the Supreme Court, but if the case can be decided without involving the question whether said act is constitutional or not, then this court may retain jurisdiction.

The demurrer raised the question that the statute was not intended to apply to a case like the present. If this contention be sustained, then the act is not involved and we are not concerned with its constitutionality, but if it does apply here, it is determinative in favor of defendant and we cannot escape the constitutional question. It becomes necessary, therefore, to settle first the question as to the application of said statute to the present case. In order to discuss this question it is necessary to set out the caption and the first and second sections of said act, which are as follows:

"A BILL to be entitled an Act to require the State of Tennessee to pay for all rights of way, and damages and costs incident thereto, necessary to the construction of any highway, or parts thereof, designated and adopted by the Department of Highways and Public Works as and for a State or State and Federal Aid Highway in the State's system of Highways, when the county or counties affected thereby shall not have agreed to cooperate therein; to include all such rights of way as are now in litigation or dispute between such county or counties and said department excepting such as shall have been settled by mutual agreement; to define the requisite agreement to cooperate; to prescribe the manner of payment, and to repeal all other laws in conflict with same.

"Section 1. BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF TENNESSEE, That the State of Tennessee shall be liable for and held to pay, through its Department of Highways and Public Works and as other highway

expenses are paid, for all rights of way and damages and costs incident to the acquisition and use of same, whether by condemnation suits or otherwise as provided by existing laws, necessary to the construction of any highway, or parts thereof, designated and adopted by said Department as and for a State or State and Federal Aid Highway in the State's system of highways, and that no county or counties affected by such highways will be liable therefor unless and until such county or counties shall have first entered into an agreement or agreements with said Department to co-operate therein, and then only to the extent of such agreement or agreements.

"Section 2. BE IT FURTHER ENACTED, That the provisions of Section 1 of this Act shall apply to all rights of way, and incidental damages and costs, heretofore designated, adopted and taken over or sought to be taken over by said Department as and for a part or parts of any of the highways therein referred to, whether such projects have been completed or are now under construction or yet to be constructed, or whether such rights of way are now involved in litigation in any of the courts of the State or are merely in dispute as between said Department and the county or counties affected upon the question of their respective liability therefor; provided, there shall be excluded from the provisions of this Act all cases, whether in pending suits or otherwise, wherein such county or counties shall have entered into an agreement or agreements with said Department to co-operate under existing laws or the question of liability shall have been determined and settled as between them by mutual agreement.''

Reading either the caption or Section 2 we think it is clear that the Act refers to pending litigation and disputes between counties and the Highway Department and not to pending litigation between a property owner and a county. The Caption says: "to include all such rights of way as are now in litigation or dispute between such county or counties and said department." This cannot be taken to mean that the statute is retroactive as to the pending suit of an individual. The language of Section 2 while not so simple as that of the caption, clearly carries the same meaning, that is, that the statute is retroactive only as to litigation and disputes pending between a county and the Department of Highways & Public Works. Even if this were not so clear in the body of the Act, the fact that the caption is unambiguous, would lead the court to construe the body of the Act in consonance with the caption. However, it is only necessary to say that taking the caption and Section 2 together, it is clear that this statute has no application to the present case and therefore it is not necessary to say whether it is constitutional or not.

In this connection we will dispose of the 10th assignment of error which is as follows:

"The trial court erred in sustaining the objection of plaintiffs on cross-examination of plaintiff J. H. Adams, to the question asked by defendant's attorney of said J. H. Adams, 'Now who actually took possession of your property when they made that highway?'"

Bearing on the subject of this assignment the record contains this:

"Q. Now, who actually took possession of your property when they made this highway?

"MR. FARLEY: I object to that question, if your Honor please. In the case of Carroll County v. Matlock, 7 Tenn. App., 564, it says that it doesn't make any difference who took the property, the judgment should have been against the county. In this case it said even though the proof did not show the county took the property that the county was ultimately responsible.

"MR. BEJACH: Of course, if your Honor please, that was the law at that time, but at the same time the law has since been changed, and so I say it devolves upon the plaintiff to prove that the county did take this property, and, of course, I have the right to cross-examine him to show that either that isn't true or that he doesn't know."

If we understand this, it means that counsel for the defendant conceded that the court was right as the law stood before the act of 1931. But if we are right in holding that the said Act has no application to this case, then the law has not been changed as to this plaintiff, and there was no error in the ruling of the court. Counsel for defendant says also in brief: "With Chapter 57, Acts of 1931 eliminated from consideration, we may concede that this view is correct."

The second and third assignments assert that there is no evidence to support the verdict and counsel for the county insists that even if it be immaterial to show whether the land of plaintiffs was taken by the county or the State that there is no evidence to show that it was taken by either.

There is evidence that the land was taken for highway purposes and incorporated in Highway 57. It must have been taken by either the State or the county, and if as held in the case of Carroll County v. Matlock, 7 App. Rep., 564, the county is liable in either case, this would seem to answer the objection.

Besides this, E. W. Hale, Chairman of the County Commission, says he had some conversation with Adams about moving some shrubs. Then the record contains this:

"Q. Were you acting for and on behalf of Shelby county at that time? A. Surely, yes.

"Q. If Mr. Walker went to see Mr. Adams and had any conversation with him or made any proposition or offer in connection with the property was he acting on behalf of Shelby county at the time? A. He was, for the Commission.

"Q. Was he duly authorized to act? A. Well, yes. Yes."

Adams says Walker came to see him "and said he wanted me to give them a strip for a highway through there." Hale says Walker is county surveyor and has authority to represent the county in matters of this sort. If the county was not taking the property, why was Hale, county chairman, and Walker, county surveyor, negotiating about the matter? Walker came to see Adams and told him to move the plants, and that if he did not move them, he (Walker) would have Arthur Murray to move them. Walker also submitted a right of way deed to Adams to sign. This testimony is objected to by defendant and the admission of it is assigned as error on the ground that it was an offer of compromise. Counsel for plaintiff says it was not an offer of compromise but an offer to purchase and introduced merely to show the activity of the county in regard to this right of way. We think on this theory the evidence was competent, but even if not, there was enough evidence to warrant the jury in holding the county liable.

Another assignment is that the verdict is excessive. This is based upon the testimony as to the value of the shrubs and evergreens. Assignments 8, 9 and 11 go to objections to testimony admitted in regard to said nursery stock. It is contended that the land and the trees on it cannot be valued separately. It is conceded, however, that the crop on land may be valued apart from the land though it is not competent to prove expected profits from the crop. This nursery stock was a crop and not like a natural growth of trees. A crop may mature in less than a year or may take several years. Nursery stock is to be removed from time to time to make room for other crops. There was no error in allowing its value to be proved as a crop. Nor can defendant complain at the amount allowed $875 for all incidental damages. We do not understand that there is any objection to the amount allowed for the land $375. Murray valued the shrubbery as it stood at $750 and several witnesses valued the land at $500. Adams put the reduced value of the remaining land at $800; Lemonds at $400; Bicknell at $300. In addition, Adams testified to other incidental damages to his driveways $150. In view of the testimony we cannot say the verdict was excessive.

The seventh assignment is that it was error to admit the testimony of Adams that Scharf & Crump represented themselves as agents of the county. If this was error, it was harmless. It only went to show

that the county was acting in this transaction and of this there was stronger evidence which was not incompetent.

The twelfth assignment claims error in that the court sustained objection to the attempt to prove a mortgage on the property. There was no error in this. The plaintiffs being in possession had the right to sue and recover even if there was a mortgage on the land. Turnpike Co. v. Fry, 88 Tenn., 295, 12 S. W. 720; Loveman & Cohn v. Knight, 153 Tenn., 268, 283 S. W. 450.

The thirteenth assignment is that it was error to allow Bicknell to testify as to an excavation at the west end of the property of plaintiffs in the absence of any showing that such excavation was made by Shelby county. If the county was liable for taking the land for highway purposes and for damages by reason of the construction of the road, it will be presumed the county is responsible for excavations and embankments made in constructing the highway. Especially is this true when it would have been easy for the county to have proved that it did not make the excavation if this was the fact.

There are several assignments based on charges of the court, but the contention is that it was error to so charge in the absence of proof that either the county or the State had taken the property. What has been said in this opinion has disposed of these objections.

Then the nineteenth assignment is as follows:

"The trial court erred in refusing to give in charge to the jury a special request asked by defendant, being defendant's request for special instruction No. 5 as follows:

" 'If the land involved in this cause was taken by the Federal Government of the United States for or as a part of a Federal Highway; in that event, Shelby county would not be liable to plaintiffs for such taking unless the preponderance of the evidence also establishes that it was taken by Shelby county for such purpose.' "

There was no testimony tending to show that the Federal Government had anything to do with taking this land. The endeavor of defendant was to cast the burden on the State. If the Federal Government took the land, this was within the knowledge of defendant and it should have offered some proof. There was nothing in the record to justify the charge requested and it was properly refused. If any error was committed by the court in this case we think it was immaterial and harmless and did not affect the verdict. All assignments of error are overruled and the judgment of the lower court is affirmed.

Owen and Senter, JJ., concur.