In re Hugh Gerald HILL & Era
Gwendolyn Hill, Debtors.

Hugh Gerald HILL & Era Gwendolyn
Hill, Plaintiffs,

v.

William F. EARTHMAN, Richard D.
Taylor, & First National Bank of
McMinnville, Tennessee, Defendants.

Bankruptcy No. 1–86–02737.
Adv. No. 1–87–0238.

United States Bankruptcy Court,
E.D. Tennessee.

Feb. 25, 1988.

Robert S. Peters of Swafford, Peters & O'Neal, Winchester, Tenn., for debtors.

Maclin P. Davis, Jr. and H. Buckley Cole of Waller, Lansden, Dortch & Davis, Nashville, Tenn., and Alf Adams, Jr., of Adams, Taylor, Philbin, Pigue & Marchetti, Nashville, Tenn., for defendants, William F. Earthman and Richard D. Taylor.

Scott N. Brown, Jr., of Brown, Dobson, Burnette and Kesler, Chattanooga, Tenn., for defendant, First Nat. Bank of McMinnville.

RALPH H. KELLEY, Chief Judge.

The court lifted the automatic stay in the plaintiffs' (the Hills') bankruptcy case so that First National Bank of McMinnville could foreclose a mortgage on the Hills' land. The bank transferred the mortgage to the defendant, Earthman, who began foreclosure.

Earthman and the Hills disagreed over who was entitled to nursery plants the Hills were raising on the land. The Hills threatened to remove the plants or actually began removing them against Earthman's wishes.

Earthman sued the Hills in state court to enjoin them from removing the plants and to have a receiver appointed. The Hills responded by bringing this suit.

The Hills contend that they can use the avoiding powers under Bankruptcy Code § 544, in conjunction with Article 9 of the Uniform Commercial Code, to avoid Earthman's claim to the plants.

Earthman argues that his mortgage applies to the plants and has priority over the Hills' avoiding powers because Tennessee real property law, not Article 9 of the UCC, controls.

In addition to the above facts, the court finds the facts as follows.

The Hills executed the mortgage to the bank in 1982, after Article 9 of the UCC had become effective in Tennessee. The mortgage was duly recorded in 1982 long before the Hills' bankruptcy in 1986. The mortgage does not describe the collateral as crops, rents and profits of the land, or products of the land. The bank did not file a UCC financing statement to cover nursery plants or crops on the land or farm products.

When the Hills filed their bankruptcy petition, they acquired the rights under Bankruptcy Code § 544(a) of a third party with a judgment or execution lien on all their property. At the same time, Bankruptcy Code § 362 automatically stayed the bank from foreclosing on the mortgage. 11 U.S.C. § 362(a).

This dispute arose, as explained earlier, after the court lifted the automatic stay so that the bank could foreclose. Earthman has foreclosed subject to the court's decision in this proceeding.

## DISCUSSION

The issues in this case revolve around differences between the real property law and Article 9 of the Uniform Commercial Code. Under Tennessee real property law, Earthman's mortgage can apply to the plants even though it does not mention plants or crops or rents and profits of the land or anything else that might be interpreted to include the plants as collateral for the debt secured by the land.

Earthman contends that real property law not only makes his mortgage apply to the plants but also determines the priority of the lien against the Hills' avoiding powers under Bankruptcy Code § 544(a). Of course, Earthman assumes that under the real property law his mortgage will have priority.

Under Article 9 of the UCC, Earthman is faced with two attacks on the mortgage.

The Hills could first argue that Earthman's mortgage does not apply to the plants at all. Article 9 requires a security agreement to describe the collateral in order to create a security interest. Since Earthman's mortgage does not describe the collateral to include the plants, it does not create an Article 9 security interest. Article 9 appears to have abolished the rule that a mortgage on land automatically applies to crops because of their attachment to the land. If this is true, then Earthman's mortgage gives him no claim to the plants at all.

The Hills have concentrated on the second attack under the UCC. Assuming the real property law still makes the mortgage apply to the plants, the real property law does not determine its priority against the Hills' rights as a judgment lien creditor; Article 9 of the UCC determines priority. Furthermore, the Hills' rights have priority because the mortgage was not perfected as to the plants by filing a UCC financing statement before the Hills' bankruptcy.

Under this argument, a mortgage on land can create two liens on crops. It can create an Article 9 security interest if it describes the collateral to include crops. The same mortgage can also be a lien on crops under the real property law.

The priority of the Article 9 security interest against other claims to the crops, separately from the land, will be determined by the rules of Article 9. The Hills and Earthman disagree as to what law should determine the priority of the real property lien on crops against a security interest or a judgment or execution lien on the crops. Earthman argues that real property law controls. The Hills argue that Article 9 should control. The Hills assume that they can avoid Earthman's real property lien on the plants if Article 9 controls.

These major arguments are dealt with last, in part 4 of this discussion. The court must deal with three subsidiary questions before reaching the major issues.

(1) Are nursery plants a crop under the real property law and Article 9 of the UCC?

(2) If Article 9 controls priority, can the Hills avoid Earthman's mortgage as a lien on the plants?

(3) If the real property law controls priority, can the Hills avoid Earthman's mortgage on the plants?

(4) Does Article 9 or the real property law control?

The court will now consider the first question.

### (1)

Are nursery plants a crop under Article 9 of the UCC and under Tennessee real property law?

The movability of nursery plants causes a problem with treating them as a crop under either Article 9 or the real property law. More common crops such as cotton, soybeans, and grain are not movable while they are still growing. Their attachment to the land is necessary to their survival and their value. On the other hand, a nursery operator may raise a perennial tree or shrub to sell at one year old, two years old, three years old, or older. When the plant reaches the earliest age at which it is both safely movable and readily marketable, it is movable and should be treated as

mature, despite the nursery operator's intent not to sell it until it is older.

■ This problem apparently led Bankruptcy Judge Hippe to hold that nursery plants are a crop under Article 9 only until they reach maturity. At maturity they change their Article 9 category to inventory, which means property held for sale. *In re Frazier*, 16 B.R. 674 (Bankr.M.D.Tenn. 1981); Tenn.Code Ann. §§ 47–9–105(1)(h) & 47–9–109(3) & (4). Since the Hills have chosen not to pursue the issue when it could have been to their advantage, the court concludes that the plants are a crop under Article 9.

■ Movability is less of a problem under the real property law. Some courts have held that mature crops are not subject to a mortgage because they can be readily moved by harvesting and should be treated as purely personal property. The Tennessee Supreme Court rejected this argument. It held that mature but unharvested crops are subject to a mortgage on the land. *Langford v. Hudson*, 146 Tenn. 309, 241 S.W. 393 (1921).

The Tennessee Court of Appeals held that nursery plants are a crop despite their differences from more common seasonal crops. The question was whether nursery plants should be treated as a crop for the purpose of determining the amount of damages the county owed a farmer for land it took to widen a road. *Shelby County v. Adams*, 15 Tenn.App. 66 (1932). The court of appeals held the plants were a crop even though the nursery operator was able to move them to other land.

The court concludes that the plants are a crop under Tennessee real property law. The court will next consider the second question.

### (2)

If Article 9 controls priority, can the Hills avoid Earthman's mortgage as a lien on the plants?

■ When the Hills filed their chapter 12 bankruptcy case, they became debtors-in-possession and acquired the avoiding pow-

ers usually given to a bankruptcy trustee. 11 U.S.C. §§ 1203, 1106, & 704.

The Hills rely on Bankruptcy Code § 544(a). 11 U.S.C. § 544(a). Section 544(a) does not describe any particular kind of pre-bankruptcy transfer that can be avoided. It merely bestows on the Hills certain rights under Tennessee law. Tennessee law determines whether those rights will allow the Hills to avoid any pre-bankruptcy transfers of their property.

Section 544(a) gives the Hills the rights of a person who, at the time of the Hills' bankruptcy and without notice of the mortgage, became a creditor of the Hills and obtained a judgment or execution lien on all the Hills' real and personal property which could be subject to such a lien. Section 9–301 of the UCC provides that a later judgment lien creditor without actual notice of an earlier security interest has priority over the security interest if it is unperfected. Tenn.Code Ann. § 47–9–301(1)(b). Thus, the Hills generally can avoid a security interest in their property that was not perfected before their bankruptcy.

If Earthman's mortgage is treated as a security interest, the first question is whether it was perfected at the time of the Hills' bankruptcy.

Perfection of a security interest in a crop requires the filing of a UCC financing statement. Tenn.Code Ann. §§ 47–9–302 & 47–9–401. Neither the bank nor Earthman filed a financing statement as to the plants.

The recording of the mortgage cannot be treated as the filing of a financing statement. A financing statement as to crops must be filed in the county of the debtor's residence and the county where the land is, if the crops are in a different county. Tenn.Code Ann. § 47–9–401(1). The real estate records are also kept in the county register's office, but the real estate records and the financing statements as to crops are separate records. A mortgage recorded in the real estate records will not be filed or indexed as a financing statement covering crops on the land. A financing statement as to fixtures must be filed in the real estate records, but crop financing statements will be in the separate UCC

records. Tenn.Code Ann. § 47–9–313 & Official Comment 6; § 47–9–401(1) & Official Comment 3.

Since Earthman's security interest was not perfected before the Hills' bankruptcy, the Hills apparently can avoid it. The court would say they definitely can avoid it, except that Bankruptcy Code § 546(b) brings into play other Tennessee law.

Bankruptcy Code § 546(b) was meant to allow the priority of the debtor-in-possession's lien rights under § 544(a) to be determined by the rules of state law as if there were no bankruptcy case. 4 L. King, Collier on Bankruptcy ¶ 546.03 (15th ed. 1987). Section 546(b) also provides that notice can be substituted for bringing suit or seizing the property if either is required by state law. 11 U.S.C. § 546(b).

Assume there was no bankruptcy case. A creditor obtained a judgment against the Hills, but Tennessee law did not allow a judgment or execution lien against the plants at that moment. Earthman would prevail since he would have a security interest and the judgment creditor would have no lien at all. Earthman would also prevail if the judgment lien applied to the plants sometime later but after he had perfected his security interest.

The court raises the issue because of Tenn.Code Ann. § 26–3–102. It provides that growing crops are not subject to execution until November 15th after they mature. The Tennessee Supreme Court has held that the statute does more than delay execution; it prevents a judgment from being a lien on a growing crop until November 15th after the crop matures. *Edwards v. Thompson*, 85 Tenn. 720, 4 S.W. 913 (1887).

If the statute absolutely prohibited a lien on the plants, the court would hold for Earthman. The statute, however, only delays a lien on crops for a time. There must be proof to make the statute apply. The problem in this case is a lack of proof as to when the plants matured in relation to November 15, 1986, (which was before the Hills' bankruptcy in December, 1986) or November 15, 1987.

Since Earthman did not raise the issue or prove the facts necessary to a defense under the statute, the court presumes that the plants became subject to the Hills' lien rights under § 544 before Earthman perfected his security interest by taking possession of the land and hence the plants. Tenn.Code Ann. § 47–9–305. The Hills did not have the burden of proving the facts to show that the statute did not apply.

Thus, the Hills' rights under § 544(a) have priority. The Hills can avoid Earthman's unperfected security interest in the plants if Article 9 controls. 11 U.S.C. § 550.

The court will now consider the third question.

### (3)

Does Earthman's mortgage have priority over the Hills' rights under 544(a) if the real property law controls?

In addition to their rights as a judgment or execution lien creditor, § 544(a) gives the Hills the rights of a person who became a bona fide purchaser of their real property at the time of bankruptcy and without notice of the prior mortgage. 11 U.S.C. § 544(a)(3). Under this statute and Tenn.Code Ann. § 66–26–101, the Hills can avoid a mortgage on their land if it was not recorded before their bankruptcy. Since Earthman's mortgage was recorded before the Hills' bankruptcy, it cannot be avoided as to the land, and the Hills do not seek to avoid it as to the land. They are seeking to avoid the mortgage only as to the plants.

The rule under real property law is that a mortgage on land applies to unharvested crops simply because of their attachment to the land. *Langford v. Hudson*, 146 Tenn. 309, 241 S.W. 393 (1921). Nevertheless, the mortgage holder cannot seize unharvested crops whenever he wants. Unless the mortgage specifically restricts the debtor's rights, the debtor can harvest crops without accounting to the mortgage holder. Harvesting a crop frees it from the mortgage by breaking the attachment to the land. Furthermore, the debtor's right to harvest a crop continues after he has defaulted. The mortgage holder can cut off

the debtor's right only by taking possession of the land after a default. *Boillon–Harrison Co. v. Keeble*, 14 Tenn.App. 347 (1931). The result is that a mortgage like Earthman's allows the mortgage holder to take only the crops not harvested before he takes possession of the land after a default.

Judge Bare dealt with a similar situation in *In re Sampson*, except that it involved rent from mortgaged property. *In re Sampson*, 57 B.R. 304 (Bankr.E.D.Tenn. 1986). The mortgage was recorded before bankruptcy. In order to take the rent, however, the mortgage holder had to take possession of the property. It had not done so before bankruptcy. The bankruptcy trustee collected the rent for several months. The mortgage holder then brought suit to recover the rent previously collected by the trustee and to establish a superior right to the rent not yet due.

In state court, the prior recorded mortgage would have had priority over the rights of a later judgment lien creditor or bona fide purchaser of the property, but only as to the rent due after the mortgage holder took possession of the property. Bankruptcy Code § 546(b) allowed the same result in the bankruptcy case. The mortgage holder gave notice as a substitute for taking possession. The mortgage holder was entitled to the rent due after it gave notice, but the bankruptcy trustee was entitled to keep the rent he had already collected.

Crops can be treated the same way. The intervening judgment lien creditor or bona fide purchaser is entitled to any crop harvested before the mortgage holder takes possession. When the mortgage holder takes possession, he is entitled to any crop not yet harvested, just as he would be entitled to rent not yet due. Earthman took possession or at least gave notice under § 546(b) when he brought the suit in state court for appointment of a receiver. *In re Sampson*, 57 B.R. 304 (Bankr.E.D. Tenn.1986); *Equitable Life Assurance Society v. Ellis*, 16 Tenn.App. 551, 65 S.W.2d 250 (1933); *Akin v. Egner*, 8 Tenn.App. 560 (1928). Since the plants were still in the ground at that time, Earthman's mortgage has priority over the Hills' rights under Bankruptcy Code § 544(a).

In a similar dispute over a crop of oranges, the ninth circuit court of appeals reached the same result. *Pollack v. Sampsell*, 174 F.2d 415 (9th Cir.1949). The bankruptcy law, as applied in that case, was essentially the same as the present law under §§ 544(a) and 546(b). The California law on how a mortgage affected rents and profits from mortgaged land was essentially the same as Tennessee law. The Tennessee courts have reached analogous results in cases involving sales of mortgaged crops. *Bank of Louisville v. Hill, Fontaine & Co.*, 99 Tenn. 42, 41 S.W. 349 (1897); *Butler v. Hill*, 60 Tenn. 375 (1872).

The result is that Earthman's mortgage has priority over the Hills' rights under § 544(a), if the real property law controls. The court will now consider the final question.

### (4)

Does the real property law or Article 9 of the UCC control?

A security interest is an interest in personal property to secure payment of a debt. Tenn.Code Ann. § 47–1–201(37). The Tennessee courts have made it clear that unharvested crops are personal property. *Langford v. Hudson*, 146 Tenn. 309, 241 S.W. 393 (1921); *Carson v. Browder*, 70 Tenn. 701 (1879). The UCC also treats unharvested crops as personal property. Tenn.Code Ann. §§ 47–2–102, 47–2–105(1), 47–9–102(1)(a), 47–9–105(1)(h), & 47–9–109(3). Thus, a right to take unharvested crops to satisfy a debt is a security interest under this definition, though it may not be an Article 9 security interest, as we shall see later. The important point for now is that crops are personal property that can be sold or can be collateral for a debt without transferring an interest in the land.

The first argument is that Article 9 allows a mortgage on land to apply to crops only by creating an Article 9 security interest in crops. A mortgage will not apply to

crops simply as a result of their attachment to the land because Article 9 does not allow it.

The eighth circuit court of appeals reached this conclusion in a case involving Missouri law. *United States v. Newcomb,* 682 F.2d 758, 33 UCC Rep. 1748 (8th Cir. 1982). Some provisions of Article 9 support the conclusion, as explained below.

The Tennessee courts have treated rent and crops essentially the same in determining the rights of a creditor with a mortgage on the land. Article 9 provides that the real property law still determines how a mortgage on real property affects rent, but it does not make the same exception for crops. Tenn.Code Ann. § 47–9–104(j). This suggests that Article 9, and not the real property law, determines whether a mortgage on land applies to crops.

Article 9 recognizes that there can be competing claims to fixtures under real property law and Article 9 and provides rules for determining priority when there is such a conflict. Tenn.Code Ann. § 47–9–313. Article 9 does not have a similar statute to deal with a priority conflict as to crops between a claim under real property law and an Article 9 security interest. This suggests that Article 9 does not allow a mortgage on land to create a lien on crops other than an Article 9 security interest. The only possible priority conflict would be between an Article 9 security interest created by a mortgage and an Article 9 security interest created by a security agreement.

The original version of § 9–204 provided that a security agreement could apply only to crops planted within a year after the agreement was executed, unless the agreement was part of a mortgage on land. A mortgage on land could apply to crops on the land for the entire term of the mortgage, *if the parties so agreed.* Tenn.Code Ann. § 47–9–204(4)(a). The requirement of an agreement apparently meant that a mortgage on land could apply to crops only if the mortgage included an agreement as to crops. By including an agreement as to crops, the mortgage would describe the collateral as required by Article 9 and would create a security interest in crops. It would not apply to crops simply because of their attachment to the land.

This part of § 9–204 was deleted by the 1972 amendment, which has since been adopted in Tennessee. Section 9–204 was originally intended to prohibit a long-term security interest in crops separate from a mortgage on the land. The provision failed because a financing statement could perfect a security interest in all future crops without regard to whether there was one security agreement or a series of annual security agreements. The limitation only caused the additional paperwork of having to execute annual security agreements. This is why the limitation was deleted. Draftsmen's Statement of Reasons for 1972 Changes in Official Text, ¶ 4. The deletion was not intended to back away from the intent of original § 9–204 that a mortgage on land must include an agreement as to crops in order to apply to crops.

Finally, Article 9 does not require financing statements as to crops to be filed in the real estate records. By contrast, Article 9 requires a financing statement as to fixtures to be filed in the real estate records.

Thus, Article 9 supports the conclusion that it does not allow a mortgage to apply to crops under the real property law.

Article 9 provides a counter-argument under the general rule that it applies to transactions "intended" to create security interests. Tenn.Code Ann. § 47–9–102(1)(a). Intent to create a security interest appears to mean (1) that the transaction has the effect of creating a security interest and (2) that the parties must have realized that it had that effect. The parties do not have to realize that the transaction creates what the law calls a security interest. They need only realize that the result of the transaction is to allow the creditor to take the debtor's personal property in order to collect the debt if the debtor fails to pay.

Under this reasoning, any mortgage on land may be intended to create a security interest in growing crops. The parties, if they thought about it, would have realized that growing crops must go with the land.

This leads to the same conclusion suggested by the other statutes: since the adoption of Article 9, a mortgage on land can apply to crops only by creating an Article 9 security interest in crops. Under this reasoning, the counter-argument is not totally convincing but does raise a difficult problem of interpretation.

The court can avoid the problem in this case. The real property law can still make the mortgage apply to the plants between the Hills and Earthman, as parties to the mortgage. This does not mean the real property law must determine priority between the mortgage and the Hills' rights as a third party lien creditor under § 544(a). The court agrees with the Hills' argument that priority should be determined by Article 9 of the UCC and not by the real property law.

Consider the following example.

A mortgage on land creates an Article 9 security interest in crops, but the mortgage holder fails to perfect it by filing a UCC financing statement. He does record the mortgage in the real estate records. The farmer later gives a secured party an Article 9 security interest in future crops. The secured party files a UCC financing statement to perfect the security interest. He checks the UCC filings and finds no prior security interests in crops, but he does not check the real estate records. The farmer plants some crops but defaults on the mortgage before they are ready for harvest. The mortgage holder takes possession of the land and begins foreclosure. The secured party intervenes. He argues that his security interest entitles him to the crops or their proceeds, after paying the mortgage holder or the buyer at foreclosure for the use of the land until the crops are harvested. The practical problems can be dealt with one way or another. The secured party's point is that foreclosure on the land should not deprive him of his perfected security interest in the crops.

Under Earthman's theory of the law, the mortgage holder has an unperfected security interest that is inferior to the later perfected security interest. The mortgage holder also has a real property lien on the

crops because of their attachment to the land. Furthermore, the real property lien on the crops has priority over the later perfected security interest because priority is determined by the real property law rather than Article 9. The mortgage holder's foreclosure on this prior lien will cut off the secured party's security interest in the crops.

More complicated situations can easily arise. In addition to mortgages on the land and separate security agreements on crops, Tennessee law provides a special security interest for a person who furnishes supplies for planting and raising a crop. Tenn. Code Ann. §§ 43–31–101 et seq. The security interest is treated essentially like a purchase money security interest under Article 9. Compare Tenn.Code Ann. § 47–9–312 & Tenn.Code Ann. §§ 43–31–103 & –105.

In light of the problems that might arise, the court believes that Article 9 of the UCC should determine priority. Since the adoption of Article 9, a creditor who takes a security interest in crops should be able to determine and control the priority of the security interest against other contractual liens and against judgment liens by checking the UCC filings and by filing a financing statement. The creditor should not have to check the real estate records. Article 9 attempted to modernize and simplify the law of secured transactions in personal property. This purpose should not be undercut by adopting a set of conflicting priority rules for a crop lien that is created by a contract, a mortgage on land, as a matter of law rather than by express agreement in the contract. The present system of crop financing and farm lending with crops as collateral would be unduly upset if the court allowed recorded mortgages on farm land to have a supervening non-Article 9 priority over perfected security interests in crops.

Earthman could argue that this reasoning is irrelevant in this case. Article 9 should control when the question is priority against a security interest but not when the question is priority against a judgment or execution lien. Between the mortgage and a judgment or execution lien, there is

no need to apply the UCC; to old real property law should control.

The court disagrees. Article 9 treats a later judgment lien creditor and a later secured party essentially alike. Perfection of a security interest is treated as notice to later parties, so that they cannot obtain a security interest or a judgment lien with priority over the earlier perfected security interest. Tenn.Code Ann. §§ 47–9–301(1)(b) & 47–9–312.

Assuming that Earthman's mortgage applies to the plants, the court concludes that the Hills can avoid it because it was not perfected, as required by Article 9 of the UCC, before the Hills' rights under § 544(a) attached to the plants.

### Conclusion

The court will enter an order awarding the plants to the Hills. The court will set a hearing to determine whether the Hills must pay Earthman or the buyer at foreclosure for physical damage done to the land by removing the plants. Of course, the Hills cannot be liable for a reduction in the value of the land as a result of the removal of the plants.

The court assumes that these plants were planted before the Hills' bankruptcy. If the plants were planted after bankruptcy, they might be free of the mortgage under Bankruptcy Code § 552. 11 U.S.C. § 552.

This memorandum constitutes findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.